**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**COLUMBIA DIVISION**

| | |
|---|---|
| WALTER J. SLOCUM, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOHN E. POTTER, Postmaster ) <br> General United States, ) <br> ) <br> Defendant. ) <br> _____ ) | Civil Action No. 3:08-3714-CMC-JRM <br><br> **REPORT AND RECOMMENDATION** |

Plaintiff, Walter J. Slocum ("Slocum"), filed a *pro se* complaint in this Court on November 7, 2008. After status conferences on June 30, 2009 and July 31, 2009, counsel appeared for Slocum on October 1, 2009. Defendant, John E. Potter, Postmaster General of the United States, filed a motion for summary judgment on December 9, 2009. Slocum filed a response on January 4, 2010. Defendant filed a reply on January 14, 2010. Slocum alleges that Defendant denied him a transfer from Massachusetts to South Carolina because of his age and disability (or perceived disability) in violation of the Age Discrimination in Employment Act ("ADEA") and the Rehabilitation Act ("RA").

**Standard for Summary Judgment**

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the

evidence must be viewed in the light most favorable to the non-moving party. *Id*. Courts take special care when considering summary judgment in employment discrimination cases because states of mind and motives are often crucial issues. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir.), *cert. denied*, 484 U.S. 897 (1987). This does not mean that summary judgment is never appropriate in these cases. To the contrary, "'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" *Id.* (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, Defendant "bear( ) the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id.* at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Id.* and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995). Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits [*see* Fed. R. Civ. P. 56(e)], depositions, interrogatories, or admissions to demonstrate the

existence of a genuine and material factual issue for trial. Baber, citing Celotex Corp., *supra*. Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corporation, 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7. Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Services Co., 875 F. Supp. 1115 (D.Md. 1995).

**Facts**

The record in this case contains copies of transcripts of a hearing held before an Administrative Law Judge for the Equal Employment Opportunity office ("EEO__") on September 14, 2006, and Slocum's deposition taken on November 9, 2009 ("Pl.Dep. __"), as well as other exhibits. The parties have each provided a detailed factual recitation based on the record. The following facts are either undisputed or stated in the light most favorable to Slocum:

1. Slocum was wounded in Vietnam while serving in the United States Army. He was honorably discharged and received a disability rating through the Veterans Administration. He has received treatment over the years for his physical injuries and has been diagnosed with post-traumatic stress disorder. (Pl.Dep. 8-13; EEO 10-18).

2. Slocum began working as a letter carrier for the United States Postal Service ("USPS") in 1973 in Massachusetts. (Pl.Dep. 15).

3. In the 1990's Slocum transferred to Colorado for three years and then returned to Massachusetts. (Pl.Dep. 15-16).

4. On June 1, 2003, Slocum wrote the USPS Transfer Department and requested a transfer from Massachusetts to South Carolina for family reasons. At that time he had been a letter carrier for thirty-three years. (Def.Mem., Ex. 1).

5. On June 18, 2003, Slocum completed a form requesting transfer and sent it to the USPS Human Resources Office in Columbia, South Carolina. In that form he indicated that he had a sick leave balance of 500 hours, that he had not had a serious illness or injury that required use of a significant amount of sick leave, and that he had sustained no on-the-job injuries. (Def.Mem., Ex. 2).

6. On June 25, 2003, Cerita B. Loftis ("Loftis"), a USPS Human Resources Specialist in South Carolina, requested Slocum's personnel records from Human Resources in Plymouth, Massachusetts. They were received on July 11, 2003. (Def.Mem., Ex. 3).

7. The records showed that Slocum had reported three on-the-job injuries during 1999, 2000, and 2001. (Def.Mem., Ex. 5).

8. Loftis recommended to Marilyn Spells ("Spells") Senior Plant Manger, and Stephen Niedziela, Senior POOM,[1] that Slocum not be granted a transfer to South Carolina "based on attendance/accident/injury." In the "Comments" section of the recommendation form, Loftis stated:

> Supervisor's Evaluation: Attendance/Work Performance/Safety - Good. Customer Service/Attitude - Very Good. Employee states no serious illness/injury for use of sick leave. Leave (AL/SL) used in conjunction with off days frequently. Supervisor states he is Disabled Vet and has had surgery to correct his problem. Accident - 3-2

---

[1] As Senior POOM, Niedziela "managed the retail, the delivery, and the customer service for pretty much the State of South Carolina." (EEO 108).

4

slipping, 1 lifting. Injury - 4 - 3 falls, 1 lifting. Letter of Appreciation - 2/74, 9/74, 6/83.

(Def.Mem., Exs. 5 and 6).

9. Spells and Niedziela concurred in the recommendation. (*Id*).

10. On July 29, 2003, Spells and Niedziela each wrote Slocum that his request for reassignment was denied based on his "attendance, accident, and injury history." (Def.Mem., Exs. 7 and 8).

11. Slocum made an appointment with Niedziela to seek reconsideration. Slocum tried to explain his situation, but Niedziela told him, "(y)ou're too old; you have been in the business too long. You know every trick in the book. You're not coming down here on my watch playing golf until you retire...I need younger people that will give me 10, 11 hours a day, six days a week with no questions asked." (EEO 45-46).

12. Niedziela told him to come back in two weeks. (EEO 46).

13. At their second meeting, Niedziela told Slocum that he would not approve the transfer under any circumstances. Niedziela explained that there was a big problem with sick leave in South Carolina and inferred that Slocum would add to the problem. (*Id.*)

14. On August 19, 2003, Niedziela wrote Slocum that his request for reconsideration was denied giving the following summary of the reasons:

> You have cited two weeks of leave used in the 1980's for your son's eye surgery, one week of sick leave used for your wife's surgery in 1990, and two weeks used for hospitalization for pneumonia. This time totals 120 hours. For the years of service, you should have a sick leave balance of approximately 3292 hours. Your balance at time of your file's review was 491 hours. Adding the 120 hours cited above; you would have a balance of 610 hours. That still leaves over 2000 hours of sick leave unaccounted.

> A review of your PS forms 3972, Absence Analysis, shows a consistent use of sick leave and annual leave in conjunction with offdays.
>
> Your accident history reflects three accidents: 01/12/2001, 10/02/2000, and 05/21/1999. These three accidents resulted in injury claims. You also have one additional injury claim filed 03/03/1993. This District places great emphasis on employees performing their jobs in a safe manner.

(Def.Mem., Ex. 8).

15. Slocum returned to Massachusetts and received counseling for the emotional distress of the denial of his request to transfer. He retired from the USPS effective January 4, 2004. (Pl.Dep., 45-48).

16. Slocum filed a Complaint of Discrimination with the USPS. (Def.Mem., Ex. 9). The USPS found no discrimination had occurred. The finding was affirmed by the EEOC. (Def.Mem., Ex. 9-11).

## Discussion

**a. Rehabilitation Act**

The RA, 29 U.S.C. § 701, *et. seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.,* "generally are construed to impose the same requirements due to the similarity of the language of the two acts." Baird v. Rose, 192 F.3d 462, 468 (4th Cir. 1999). Thus, courts use the same standards in evaluating cases under the RA and ADA. For ease of reference, the undersigned will generally use "ADA" for analysis in the Report and Recommendation.

Under the ADA, a plaintiff may prove his claim in one of two ways. First, where an employer concedes that the employee's disability played a role in its decision, the plaintiff must show that (1) he suffers from a disability within the meaning of the ADA; (2) he was otherwise qualified; and (3)

6

he suffered an adverse employment action because of his disability in violation of the ADA. Tyndall v. National Educ. Ctrs, Inc. of California, 31 F.3d 209 (4th Cir. 1994). Second, where the employer denies that the employee's disability played a role in its decision, a traditional McDonnell-Douglas[2] burden-shifting analysis is used. Under either method of proof, the Plaintiff has the ultimate burden of showing that he was the object of intentional discrimination by the Defendant. Williams v. Staples, 372 F.3d 662, 666 (4th Cir. 2004).

The parties appear to agree that Defendant denies that it considered Slocum's disability in refusing to allow him to transfer so that the McDonnell-Douglas method of proof is appropriate. Under this approach, Slocum must first establish a prima facie case of discrimination by showing that (1) he is in a protected class (i.e., disabled as defined by the statute); (2) he suffered an adverse employment action; (3) his job performance at the time of the adverse action met the employer's legitimate expectations; and (4) the adverse action occurred under circumstances that raise a reasonable inference of unlawful discrimination. Ennis v. National Assoc. of Business and Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995).[3] If Slocum presents sufficient evidence to establish a prima facie case, the burden shifts to the Defendant to articulate a legitimate non-discriminatory reason for its action. At that point Slocum must show that the reason proffered by the Defendant is a pretext for discrimination. Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).

Defendant argues that Slocum cannot establish a prima facie case because he has not shown that he is disabled as defined by statute and that he was performing his duties to meet his employer's legitimate expectations.

---

[2] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

[3] Defendant uses a slightly different formulation citing Lloyd v. Swifty Transportation, Inc., 552 F.3d 594 (7th Cir. 2009).

### 1. Disability[4]

The term "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Slocum claims that he has an actual disability and that USPS regarded him as having a disability.

Whether Plaintiff has an actual disability turns on whether the impairment presented by Plaintiff substantially limits a major life activity. The term "major life activities" refers to basic functions such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Plaintiff must demonstrate that, because of his stress, one of these major life activities is "substantially limit[ed]." 29 C.F.R. § 1630.2(j). In order to meet the "substantially limits" requirement, an impairment must interfere with a major life activity "considerabl[y]" or "to a large degree." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 196, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002). Several factors are considered in determining

---

[4] The ADA was amended in 2008 to more clearly define such terms as "disability" and "substantially limits." See ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553. The amendments did not become effective until January 1, 2009, and Congress did not express its intent for these changes to apply retroactively. Although the Fourth Circuit has not expressly ruled on this issue, other circuits considering the issue have found that the 2008 ADA amendments are not retroactive. See Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 34 n. 3 (1st Cir. 2009): EEOC v. Agro Distrib., LLC, 555 F.3d 462, 469-70 n.. 8 (5th Cir. 2009); Milholland v. Sumner County Bd. of Educ., 569 F.3d 562, 565-67 (6th Cir. 2009); Fredricksen v. United Parcel Serv., Co., 581 F.3d 516, 521 n. 1 (7th Cir. 2009); Becerril v. Pima County Assessor's Office, 587 F.3d 1162, 1164 (9th Cir. 2009); Lytes v. DC Water & Sewer Auth., 572 F.3d 936, 939-42 (D.C. Cir. 2009). In a recent unpublished case, the Fourth Circuit noted that other circuits have found that the 2008 ADA amendments are not retroactive and found no reason to disagree with their conclusion. Shin v. University of Md. Med. Sys. Corp., No. 09-1126, 2010 WL 850176, at *5 (4th Cir. Mar. 11, 2010). The incidents alleged in this action took place well before (and this action was filed before) these amendments took place. Therefore, Plaintiff's ADA claim has been considered under the standard in effect prior to the enactment of the ADA Amendment Acts of 2008.

whether a person is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) its duration or anticipated duration; and (3) its long-term impact. Williams v. Channel Master Satellite Sys., 101 F.3d 346, 349 (4th Cir.1996); 29 C.F.R. § 1630.2(j)(2)(I)-(iii). Plaintiff must show that he is "(i) unable to perform a major life activity that the average person in the general population can perform or (ii) [that he is] significantly restricted as to the condition, manner, or duration" of his ability to perform a major life activity compared to an average person. 29 C.F.R. § 1630.2(j)(1).

Slocum has not shown that he was disabled as defined by the RA and/or ADA. He has shown that he has an impairment resulting from his wounds in Vietnam and that he qualifies for a disability from the VA. However, this does not mean *ipso facto* that Slocum was disabled as defined by the ADA. He must produce evidence that this impairment substantially restricted a major life activity. Slocum argues that his impairment substantially restricted the major life activity of walking. (Pl.Mem., p. 11). However, he has not produced any evidence on this point. As a matter of fact, Slocum testified just the opposite during his deposition.

> **Answer:** No, there was no physical or emotional problems when I applied for that transfer. There was none. Physically, I was doing well, okay? Every now and then, I would have to go to the VA for my foot. It was under control. I had my problems.

Given this testimony and the fact that no evidence has been presented to support a finding that Slocum's impairment was a disability as defined by the RA or ADA, the undersigned concludes that Slocum has not established a prima facie case of disability discrimination.

### 2. Regarded as Disabled

Slocum alternatively argues that he was disabled within the meaning of the statute because USPS "regarded him as having a substantially limiting impairment." (Pl.Mem., 12). The

Fourth Circuit discussed the standard for proving a "regarded as disabled" claim in Haulbrook v. Michelin North America, Inc., 252 F.3d 696, 703 (4th Cir. 2001):

> An individual is regarded as being disabled if he is regarded or perceived, albeit erroneously, as having an impairment that substantially limits one or more of his major life activities. 42 U.S.C.A. § 12102(2) (West 1995). One may be "regarded as" disabled under the ADA if either "(1) a covered entity mistakenly believes that [one] has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Sutton v. United Air Lines, Inc., 527 U.S. 471, 489, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). The fact that an employer is aware of an employee's impairment, without more, is "insufficient to demonstrate either that the employer regarded the employee as disabled or that perception caused the adverse employment action." Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir.1996).

It is evident that the USPS, Loftis and Niedziela were aware that Slocum had an impairment. He would have received a "veteran's preference" upon his hiring which would have included a recognition of his service related disability. *See* Moore v. Potter, 605 F.Supp.2d 731, 734-735 (E.D.Va. 2009) ("the Veterans Preference Act was enacted to give wartime and disabled veterans preferential consideration for certain [government] jobs"). Further, Loftis obtained Slocum's personnel file which would include this information, and her recommendation to Niedziela stated that Slocum "is a Disabled Vet and has had surgery to correct his problem." Therefore, Defendant's argument that "(t)here is no evidence that any of the decision-makers in this case were aware of Plaintiff's impairments at the time of the initial decision (Def.Mem., 15) is wholly without merit.

On the other hand, Slocum has produced no evidence that the USPS or any of its employees regarded him as disabled as defined by the ADA/RA. Slocum has only produced evidence that the USPS was aware of his impairment and that he received a disability rating from the VA.

### 3. Work Performance

Defendant also argues that Slocum cannot show that he was meeting his employer's legitimate employment expectations because "he had used 80% of his available sick leave and had three reported work accidents and four reported injuries in the last five years." (Def.Mem., 16).

Slocum's use of sick leave to seek treatment from the VA, and his reporting of several work related accidents which did not cause him to miss substantial amounts of work, has little, if anything to do with his job performance. In fact, Loftis reported in her recommendation to Niedziela that Slocum's supervisor in Massachusetts rated his attendance/work performance/safety as "good" and his customer service/attitude as "very good." Defendant points to nothing in the record to show that Slocum was ever reprimanded for poor work or abuse of leave.

### 4. Pretext

USPS does not make a clear argument with respect to pretext, the final step of the McDonnell Douglas analysis. (*See* Def.Mem., 16-17). As the undersigned views the record, USPS has proffered a legitimate, non-discriminatory reason for its refusal to allow Slocum to transfer. The stated reason was "based on attendance/accident/injury." (Def.Mem., Exs. 5-7). This conclusion was reached through a process that included a review of Slocum's personnel file and a questionnaire that was sent to him by Loftis. On that questionnaire, Slocum stated that he had a sick leave balance of 500 hours, that he had no serious illness or injury that required the use of a lot of sick leave, and that he had not sustained on-the-job injuries. (Def.Mem., Ex. 2).

At the EEO hearing Loftis testified that she reviewed Slocum's record and determined that he had a balance of 491 hours and a possible sick leave accumulation of 3292 hours. Because Slocum reported no illness or injury that required the use of sick leave, she determined that the ratio

11

of sick leave balance to possible sick leave was low. Based on this, and that Slocum had several accidents which he did not report, she recommended that his transfer be denied. Niedziela, the ultimate decision-maker, concurred.

Slocum argues that this process was unfair and that he had valid explanations for his answer on the questionnaire and for his low sick leave balance. However, he has not shown that the process used by Loftis and Niedziela was a pretext for discrimination based on a disability.

### 5. Disparate Impact

At the beginning of the argument section of his brief in opposition to the motion for summary judgment, Slocum states that the process used by Niedziela and the USPS in South Carolina had a disparate impact on "older and injured employees seeking transfers." Disparate impact cases involve "employment practices that are facially neutral in their treatment of different groups but that, in fact, fall more harshly on one group than another and cannot be justified by business necessity." Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993). A plaintiff may bring a disparate impact case under the ADEA, Meacham v. Knolls Atomic Power Lab, 554 U.S. 84 (2008) and the ADA, Raytheon Co. v. Hernandez, 540 U.S. 44, 54 (2003).

Insofar as Slocum now asserts a claim based on a theory of disparate impact, it fails because it was not exhausted in the administrative process, nor was it raised in the complaint. Further, the record contains no statistical evidence to support a claim that the USPS process resulted in less favorable treatment to employees over forty or who were disabled.

In Raytheon Co. v. Hernandez, *supra*, disparate impact was raised in a similar procedural posture. The District Court and Court of Appeals held that it was not properly raised. The Supreme Court held that in such a situation, disparate impact could be considered in the pretext phase of the

McDonnell Douglas analysis, the question would be whether plaintiff could produce sufficient evidence from which a jury could conclude that defendant's stated reason for plaintiff's rejection was in fact pretext. Raytheon Co. v. Hernandez, 540 U.S. at 51-52.

Therefore, the undersigned concludes that Slocum's disparate impact claim is without merit. As discussed above, Slocum cannot establish a prima facie case of disability discrimination so the pretext phase need not be reached. Further, even if it is reached, Slocum has produced no evidence, statistical or otherwise, as to disparate impact. Last, as discussed below, Slocum's ADEA claim is based on direct evidence and pretext is not relevant.

Based on the above discussion, the undersigned concludes that Slocum cannot establish a prima facie case of disability discrimination because he has not shown that he was disabled or regarded as disabled by the USPS.

b. **ADEA**

The ADEA [29 U.S.C. § 623(a)] states:

> It shall be unlawful for an employer–
>
> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age;

In an ADEA disparate treatment case, such as this one, Slocum must prove that but for his age, he would not have been subjected to an adverse employment action. Bickford v. Denmark Technical College, 479 F.Supp.2d 551, 563-564 (D.S.C. 2007) citing Holmes v. Bevilacqua, 794 F.2d 142 (4th Cir. 1986)[5]. He can prove USPS's motive to discriminate based on age in one of two ways.

---

[5]A mixed motive analysis is inappropriate for ADEA cases. Gross v. FBL Financial Services,
(continued...)

First, Slocum "may meet this burden under the ordinary standards of proof by direct and indirect evidence relevant to and sufficiently probative of the issue. In the alternative, a plaintiff may resort to the judicially created scheme established in [McDonnell Douglas and Texas Dep't of Cmty. Affairs v. Burdine]." EEOC v. Clay Printing Co., 955 F.2d 936 (4th Cir.1992).

Slocum appears to rely on direct evidence of the USPS's motive to discriminate based on his age. (Pl.Mem., 14). The parties do not discuss a McDonnell Douglas burden shifting analysis of the ADEA claim. Direct evidence is evidence that the employer "announced, admitted, or otherwise indicated that [the forbidden consideration] was a determining factor...." Cline v. Roadway Express, Inc., 689 F.2d 481, 485 (4th Cir.1982) (citing Spagnuolo v. Whirlpool Corp., 641 F.2d 1109, 1113 (4th Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981)). In other words, direct evidence is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir.1995), *abrogated on other grounds,* Desert Palace, Inc. v. Costa, 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). Bickford v. Denmark Tech. Coll., 479 F.Supp.2d 551, 564 (D.S.C. 2007)

Slocum relies on the statements made to him by Niedziela when he sought reconsideration of the decision to deny his transfer request. The statements, quoted above, qualify as direct evidence of discrimination. In discussing the reason for denial, Niedziela told Slocum that he was "too old," that he had "been in the business too long," and that he (Niedziela) needed "younger people that will give me 10, 11 hours a day, six days a week with no questions asked." (EEO - 45-46). These statements directly reflect Niedziela's attitude and bear directly on his decision not to accept

---

[5](...continued)
Inc., ___ U.S. ___, 129 S.Ct. 2343 (2009).

Slocum's transfer. Under this analysis, the legitimate, non-discriminatory reason for denial, discussed above plays a different role. Niedziela denies making these statements. (EEO 124-125). Therefore, a credibility issue exists as to whether Niedziela made these statements, and the transfer was denied because of Slocum's age, or that the transfer was properly denied based on the low sick leave balance and accidents. If a jury believes that Niedziela made these statements, it could reasonably conclude that the decision to deny the transfer was based on Slocum's age.

### Conclusion

Based on a review of the record, it is recommended that Defendant's motion for summary judgment should be **granted** as to Plaintiff's RA claim and **denied** as to his ADEA claim.

_____
Joseph R. McCrorey
United States Magistrate Judge

Columbia, South Carolina

June 8, 2010