IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Walter J. Slocum, ) | C/A NO. 3:08-3714-CMC-JRM |
| ) | |
| ) | |
| Plaintiff, ) | |
| ) | **OPINION AND ORDER** |
| v. ) | **FINDINGS OF FACT AND** |
| ) | **CONCLUSIONS OF LAW** |
| John E. Potter, ) | |
| Postmaster General, ) | |
| United States, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter was before the court for a trial without a jury December 7, 2010. Having considered the testimony of Walter J. Slocum ("Slocum"), Cerita Loftis ("Loftis"), and Steve Niedziela ("Niedziela"), the deposition and administrative hearing testimony of Jacqueline Martin ("Martin"), the exhibits and post trial briefs, the court makes the following findings of fact and conclusions of law. To the extent the court's statements regarding either facts or law may be considered in the other category, the conclusions remain those of this court in the appropriate category.

**FINDINGS OF FACT**

1. Slocum began his employment with the United States Postal Service ("USPS") in 1972 on a temporary basis and in 1973, he became a career employee. During the summer of 2003, he was employed as City Carrier in Plymouth, Massachusetts.

2. As of summer 2003, Slocum was a member of the protected class of individuals over the age of forty, having a birthdate in 1952.

3. At the time he was hired by USPS, Slocum was a Disabled Vietnam Veteran having been wounded in combat.

1

4. In summer 2003, Slocum desired to transfer to South Carolina for personal reasons and contacted postal officials in South Carolina about the possibility of a transfer. Def. Ex. 1.

5. Slocum's letter was referred to Human Resources Specialist Loftis, who sent Slocum a form letter and questionnaire entitled "Request for Reassignment" to fill out and return. Joint Ex. 3 at 16.

6. Slocum filled out and returned the Request to Loftis. Def. Ex. 2.

7. Having received Slocum's completed Request for Reassignment questionnaire, Loftis requested additional information concerning Slocum's work history from the USPS facility where he was employed in Plymouth.

8. When Slocum's information was received from Plymouth, Loftis reviewed Slocum's reassignment request. She compared his sick leave balance with her calculations of the amount of leave he could have accumulated. Slocum's attendance history showed that Slocum, a long-time USPS employee, had earned 3292 hours sick leave to date. He had used all but 491 hours at the time of his reassignment request - over 80% of his available sick leave. Def. Exs. 5 and 6. Loftis noted that Slocum had answered "No" to the following question on the Request for Reassignment questionnaire: "Have you had any serious illness or injury that has required you to use a lot of sick leave?" Def. Ex. 2.

9. Loftis also observed a second inconsistency. Although the Request for Reassignment questionnaire stated that he had no on-the-job injuries, his personnel records revealed that he had actually reported on-the-job injuries on May 21, 1999, October 2, 2000, and January 12, 2001. Def. Ex. 4.

10. Loftis concluded that Slocum's reassignment request should be denied based on his low sick leave balance, use of sick leave in conjunction with scheduled days off, lack of illness or injury to justify his use of sick leave, and false answers in his Request for Reassignment questionnaire.

11. Loftis prepared two forms recommending that Slocum "not be offered reinstatement to this District based on attendance/accident/injury." Def. Exs. 5 and 6.

12. Loftis submitted her recommendations against reinstatement to the two selecting officials, Marilyn Spells ("Spells"), Senior Plant Manager of the Columbia Processing and Distribution Center, and Niedziela, acting Senior Post Office Operations Manager for Greater South Carolina on July 14, 2003 and July 23, 2003 respectively. Def. Exs. 5 and 6.

13. Following her review of the packet of information from Loftis, Spells accepted Loftis' recommendation to deny Slocum's request for reassignment to Columbia Processing and Distribution Center on July 16, 2003. Spells noted: "Unacceptable attendance and safety record." Def. Ex. 6.

14. Niedziela also reviewed the package of information from Loftis and concurred with her recommendation to deny Slocum's request for reassignment to a South Carolina letter carrier position on July 25, 2003. Def. Ex. 5.

15. On July 29, 2003, Spells and Niedziela separately issued to Slocum written "denial of transfer" letters. These letters were prepared by Loftis. Def. Ex. 7.

16. The USPS union guidelines allow deciding officials to consider attendance and accident/injuries in analyzing requests for transfers.

17. Slocum has never met Loftis or Spells.

3

18. As of July 29, 2003, Niedziela had neither met nor spoken with Slocum.

19. In early August 2003, Slocum met with Martin, Manager of Personnel Service in Columbia, and requested an opportunity to present more information regarding his attendance record. She informed him that the selecting officials were Niedziela and Spells and that he should contact them to discuss a possible reconsideration. Def. Ex. 17 at 52.

20. On August 6 and 8, 2003, Slocum submitted letters to Martin indicating that he had made mistakes on his Request for Reassignment questionnaire and providing more information regarding his use of sick leave. Joint Ex. 3 at 3 and 4.

21. On August 18, 2003, Slocum met with Niedziela. This was the first time Niedziela had met or talked with Slocum.

22. At their meeting, Niedziela gave Slocum the opportunity to provide further explanation as to his low sick leave balance. Niedziela agreed to review additional information provided by Slocum and reconsider his decision to deny Slocum's reassignment request.

23. Following his review of additional information provided by Slocum, Niedziela decided not to change his earlier denial of the reassignment request and informed Slocum of this decision by letter dated August 19, 2003. Def. Ex. 8.

24. In the August 19, 2003 letter, Niedziela noted that, even accounting for surgeries and documented illnesses, Slocum still had 2,000 hours (a full work year) of unexplained sick leave. Further, the records showed a consistent use of sick leave in conjunction with scheduled days off. Def. Ex. 8.

25. Slocum testified he met with Niedziela twice. He claims that during the second meeting, Niedziela said to him, "I need younger people. I want people who will work ten, eleven

hours a day, six days a week, without taking sick leave." Niedziela denies making this statement. At the time, Niedziela was fifty-five years of age and a Disabled Vietnam Veteran.

26. Niedziela recalls only one meeting with Slocum, the meeting on August 18, 2003. The only other time he saw Slocum was at the door of the Post Office during a fire alarm sometime after this meeting. Although Slocum recalls two meetings, one on August 20, 2003 and a second approximately two weeks later, he claims that the alleged discriminatory statement was made in the second. The first meeting could not have occurred on August 20, 2003, first, because the final rejection letter was mailed August 19, 2003 indicating that Slocum must have met with Niedziela before that date. Def. Ex. 8. Second, Slocum's medical records indicate that he was at a doctor's appointment in Massachusetts on August 20, 2003. Joint Ex. 2 at 106. The court finds that the meeting at which Slocum claims Niedziela made the alleged discriminatory statements took place on August 18, 2003.

27. Slocum testified that Niedziela's actions sent him into a suicidal depression. He claims that as a result, he suffered a flare up of his pre-existing post-traumatic stress disorder ("PTSD") which led to his retirement on disability.

28. In September 2003, Slocum began the application process for disability retirement. He took the remainder of his sick leave, moved to South Carolina, and got married.

29. Slocum had pre-existing psychiatric and physical problems stemming from his service in Vietnam for which he received treatment at the VA in Massachusetts. In February 2003, Slocum saw several VA medical health professionals, including Dr. Eisenberg and Dr. John Molloy.

30. Dr. Eisenberg diagnosed Slocum's mental health condition as PTSD.

5

31. On February 4, 2003, Slocum met with Dr. Molloy. Slocum made several statements to Dr. Molloy about his then current physical and mental health including that he was having "difficulty with authority" at his job at USPS and that he was "sliding."

32. Dr. Molloy noted that Slocum's medical history included shrapnel wounds to his right knee and left foot in Vietnam. Dr. Molloy noted that Slocum reported experiencing "pain in the left foot [that is] extreme at the end of a day," and that Slocum "feels he is becoming so disabled thathe [*sic*] is going to be forced to stop working as it is becoming increasingly difficult for him to carry out his duties."

33. Slocum began seeing Dr. John A. Greene August 6, 2003, and made return visits August 20, August 27, September 3, and September 9 of that year. Dr. Greene noted that on August 13, Slocum was feeling depressed and stated he "did not know how much longer he could do his job." On August 27, 2003, Dr. Greene noted that Slocum's affect had improved , and on September 10, 2003, Dr. Greene noted that Slocum was doing well on his medication, and they agreed to terminate their sessions.

34. Dr. Greene's notes from his meetings with Slocum do not mention any report by Slocum of the denial of his reassignment request to South Carolina.

35. On September 10, 2003, Slocum contacted an EEO Counselor. Represented by counsel, Slocum filed a formal complaint of age and disability discrimination on September 29, 2003. Def. Ex. 9.

36. On January 4, 2004, Slocum left the Postal Service on disability retirement. He claims his disability retirement was due to his physical and mental problems. Slocum testified that the mental problem was the flare up of his PTSD caused by Niedziela's alleged discriminatory

6

denial of his request for reassignment.

37. A full administrative hearing was held on September 14, 2006, and a Decision was issued on September 29, 2006.

38. Slocum timely filed suit in U.S. District Court on November 7, 2008.

**CONCLUSIONS OF LAW**

Slocum has failed to meet the burden required to prove an age discrimination claim under the Age Discrimination in Employment Act ("ADEA").  For the reasons set forth below, Slocum's request for relief is denied.[1]

**I.     DIRECT EVIDENCE OF ADEA VIOLATION**

Slocum relies on direct evidence to support his ADEA claim, which requires that a plaintiff prove, by a preponderance of the evidence (either direct or circumstantial), that age was the "but-for" cause of the challenged adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 129 S.Ct. 2343, 2351 (2009).  The burden of persuasion never shifts to the employer to show that he would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision. *Gross* at 2348.

Slocum's age discrimination claim is based solely on the comment attributed to Niedziela when Slocum asked him to reconsider the denial: "I need younger people.  I want people who will work ten, eleven hours a day, six days a week, without taking sick leave."  No evidence was presented that Loftis considered Slocum's age in making her recommendation to deny the request or that Niedziela or Spells considered Slocum's age in initially concurring with Loftis'

---

[1] Slocum asserted several other claims which were disposed of by summary judgment. Dkt. No. 48 (Defendant's summary judgment motion was granted with regard to Slocum's Americans with Disabilities Act and Rehabilitation Act claims).

7

recommendation. Slocum only argues that Niedziela wrongfully refused to change his decision to deny reassignment because of Slocum's age in violation of the ADEA.

**Age as "But For" Cause of Denial.** The court concludes that age was not the "but for" cause in the denial of Slocum's request for reassignment. Loftis recommended denying Slocum's request based on the paperwork he submitted and the information she received from Slocum's employer in Plymouth, MA. She found that his low sick leave balance, use of sick leave in conjunction with scheduled days off, lack of illness or injury to justify his use of sick leave, and false answers in his Request for Reassignment questionnaire were reasons to recommend denial of his reassignment request.[2] No evidence was presented that she considered Slocum's age in her decision. Further, before they had ever met or spoken with Slocum, the selecting officers, Spells and Niedziela followed Loftis' recommendation and denied the reassignment request for the same reasons.

Loftis' testimony made clear that the primary reason for denying Slocum's request was the inconsistencies between Slocum's answers on the Request for Reassignment questionnaire and information in his personnel file. At trial, Slocum conceded that his answers were not accurate. His explanation was that he interpreted the questions to refer to only current conditions and incidents.

---

[2] Slocum argues in his post trial brief that Loftis' rationale for denying Slocum's request for reassignment was "not grounded in any recognized Postal rule, standard or collective bargain agreement" and was therefore pretextual. The court does not find this argument persuasive. First, the USPS union guidelines allow deciding officials to consider attendance and accident/injury records in analyzing transfer requests. Second, the inconsistencies between Slocum's personnel file and his Request for Reassignment questionnaire were sufficient grounds for deciding officials to question whether Slocum's use of sick leave was legitimate. When, after further inquiry, Slocum failed to provide adequate justification for his sick leave use, Niedziela had grounds to believe that Slocum's sick leave use was not supported by medical reasons.

8

This is an untenable position considering the manner in which the questions were phrased.[3] Niedziela's testimony confirmed that his concurrence with Loftis' initial recommendation and later denial of Slocum's request for reconsideration were based on these inconsistencies and Slocum's attendance and accident/injury record, not age. Given this evidence, the court concludes that age was not the but for cause of Niedziela's denial of Slocum's reassignment request.

**Statements Allegedly Made By Niedziela.** The court cannot credit Slocum's testimony regarding discriminatory statements allegedly made by Niedziela. Slocum testified that he and Niedziela met on two occasions: (1) once on August 20, 2003 and (2) once in early September 2003 and that Niedziela made the discriminatory statements at their second meeting. Slocum's testimony about the timing of those meetings and statements made are not supported by the record.

The evidence presented at trial shows that Slocum is mistaken about the date of the first meeting and that his recollection of the second meeting cannot be credited. Niedziela's letter denying Slocum's request for reconsideration was dated August 19, 2003, indicating that he and Slocum must have met before August 19. In addition, Slocum's medical records show he was at an appointment in Massachusetts on August 20, 2003. Therefore, Slocum and Niedziela could not have met on August 20. The record also does not support the conclusion that there was another meeting after Niedziela's August 19 letter. Slocum testified that he met with Niedziela asking him to reconsider the denial of Slocum's reassignment request. Niedziela's August 19 letter clearly states that Slocum's reconsideration request had already been considered and was denied. Def. Ex. 8 ("Based on the information currently available for review, I am not in a position to change my

---

[3] The questions were geared toward getting an applicant's accident and injury history. Def. Ex. 5 ("Have you had any serious illness or injury that has required you to use a lot of sick leave?" "Have you sustained any on-the-job injuries?").

earlier decision."). The court, therefore, credits Niedziela's testimony that no further meeting took place after August 18 as supported by the final rejection letter. The court does not credit Slocum's testimony that there was another meeting in September where Niedziela made discriminatory statements. Due to the many inconsistencies in Slocum's testimony, the court does not credit his statement that Niedziela made the comment attributed to him by Slocum that he needed "younger people."

Slocum has failed to prove that his age was the "but for" cause of the denial of his reassignment request and has therefore failed to prove direct evidence of age discrimination.

## II.    *MCDONNELL DOUGLAS* FRAMEWORK

When a plaintiff produces no direct or circumstantial evidence of discrimination, the court applies the *McDonnell Douglas* burden-shifting framework to resolve claims of age discrimination under the ADEA:

> To establish such a prima facie case, a plaintiff must demonstrate that (1) he was a member of a protected class, *i.e.*, that he was at least 40 years old; (2) his employer had an open position for which he applied and was qualified; (3) he was rejected despite his qualifications or suffered an adverse employment action; and (4) the position remained open or was filled by a similarly qualified applicant who was substantially younger than the plaintiff, whether within or outside the class protected by the ADEA.

*Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006). At trial Slocum failed to establish a prima facie case under the *McDonnell Douglas* framework.

As to the first prong, it is undisputed that Slocum was a member of a protected class when he was denied his request for reassignment. However, at trial, Slocum failed to prove the second prong, that USPS had an open position and that he was qualified for that position. Rather, Slocum applied to transfer to South Carolina when or if a position became available, and, based upon his

attendance record and accident record, Slocum failed to demonstrate that he was qualified for an open position. Thus, under the *McDonnell Douglas* framework, Slocum failed to establish a prima facie case of age discrimination.

### III.     CAUSATION AND DAMAGES

Slocum does not seek reinstatement. Rather he seeks back pay. To succeed on such a claim, Slocum would have to prove that age discrimination caused him to suffer a loss of income. In this case, Slocum argues that he was so mentally distraught after Niedziela's discriminatory statements, that: (1) he was forced to take disability retirement and (2) had Niedziela not made the statements, Slocum would have continued working for USPS at least five more years. Even if the court were to conclude that Niedziela made the discriminatory statement and that age was the "but for" cause of the denial of Slocum's request for reassignment, Slocum has failed to prove that the denial of his request was a cause of his early retirement on disability.

At trial, Slocum testified that Niedziela's denial of his reassignment request led to a "flare up" of his PTSD putting him into a state of suicidal depression. Shortly thereafter Slocum applied for disability retirement claiming that complications from his foot injury and PTSD rendered him unable to work. Evidence presented at trial showed that Slocum's mental condition was pre-existing (having been diagnosed as PTSD no later than February 2003 and a condition from which he has suffered since serving in Vietnam). Slocum was receiving mental health counseling from Dr. Greene during the time he was denied reassignment and Niedziela allegedly made discriminatory remarks. Nothing in Dr. Greene's notes from the relevant time period indicate that Slocum mentioned the denial or complained of mental distress caused by it. In fact, Dr. Greene's notes indicate that Slocum's mental health improved from the end of August to early September 2003.

11

Joint Ex. 2 at 105 (August 27, 2003 Dr. Greene noted, "client's affect has improved somewhat," and September 10, 2003 Dr. Greene noted, "[a]gain his affect seems somewhat improved."). The record does not support a causal link between Niedziela's alleged statements and an aggravation of Slocum's pre-existing mental health condition.

The record also does not support a conclusion that Slocum would have worked for USPS for another five years had his reassignment request not been denied. Slocum's statements to Dr. Molloy in February 2003 indicate that the pain in Slocum's foot was so severe that he would "be forced to stop working as it [was] becoming increasingly difficult for him to carry out his duties." Joint Ex. 2 at 201. On August 13, 2003, before his reassignment request was finally denied, Slocum reported to Dr. Greene that he "did not know how much longer he could do his job." Joint Ex. 3 at 106. Slocum's testimony that he would have continued working is inconsistent with his medical records.

The court concludes that Slocum has failed to show a causal link between the denial of his reassignment request and his retirement from USPS. Without this link, Slocum is unable to make a case for back pay under the ADEA.

## CONCLUSION

Based on the findings of fact and conclusions of law above, the court finds for the Defendant on Slocum's claim for violation of the ADEA. All other claims having been disposed of on summary judgment, *supra* n. 1, the clerk shall enter judgment for Defendant.

**IT IS SO ORDERED.**

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
January 4, 2011